UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VANESSA PATTERSON,

       Plaintiff,

  -against-                                        Index No. 10-CV-6097(T)

XEROX CORPORATION and SAMUEL
PETERSON,

       Defendants.
_____


**MEMORANDUM OF LAW OPPOSING DEFENDANTS' RULE (12)(b)(6)
MOTION TO DISMISS**


                                                          Dinolfo Law Office, LLC
                                                          Joseph F. Dinolfo, Esq.
                                                          Webster Woods Professional Office Building
                                                         807 Ridge Road, Suite 203
                                                         Webster, New York 14580
                                                         (585) 347-4305 ext. 111

                                                         *Attorney for Plaintiff*

**PRELIMINARY STATEMENT**

Plaintiff Vanessa Patterson, submit this Memorandum of Law opposing the Defendants Xerox Corporation ("Xerox") and Samuel Peterson ("Peterson") (collectively "Defendants") Rule 12(b)(6) Motion to Dismiss.  Plaintiff has provided sufficient evidence to overcome Defendant's motion that Plaintiff's Complaint fails to state a plausible claim for relief under either federal or state law.

**FACTUAL AND PROCEDURAL OCCURRENCES**

Plaintiff is a current employee and union member of Xerox Corporation.  On or about April 2000, Plaintiff filed a sexual harassment complaint against Daniel Williams, a coworker, who was a friend of Peterson. (*See* Compl. 8).  For fear of retribution and retaliation Plaintiff remained silent to those around her. (*id.*) Within a year of the first complaint, Plaintiff was again harassed and threatened by, Daniel Williams ("Williams"). (*See* Compl. 9).  Which resulted in his suspension from work.  During the complaint investigation, Peterson gave testimony on Daniel Williams behalf. (*id.*)  It was then that Peterson verbalized to Plaintiff, his disapproval of what had happened to his friend, Daniel Williams.  (*id.*)  Plaintiff now being aware of Peterson's disapproval became uncomfortable around Peterson and tried to avoid having any contact with him.  This was made unavoidable in January of 2007 because Peterson was then promoted to be Plaintiff's supervisor.

Plaintiff filed a Charge/Claim of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), sworn on October 31, 2008 (*See* Compl. Exh. B).  Plaintiff 's charged claim states that she has been subjected to a hostile work environment resulting from the initial sexual harassment complaint she filed against Daniel Williams in April of 2000.  Plaintiff claims hostile work environment because she was subjected to racial discrimination as well as sex discrimination, along with a routine harassment.

It was not until January 2007, that Peterson was promoted and became Plaintiff's supervisor.  Because Peterson was a friend of Daniel Williams, which the sexual harassment complaint was filed

against, Peterson took the initiative to make Plaintiff's work day not only uncomfortable but also a miserable experience. Plaintiff had complained to Xerox about Peterson's behavior towards her, no action was ever taken to investigate such complaints. Plaintiff filed a grievance with her Union shop representative, Ron Johnson, which remains to be addressed. *See* Compl. 18. Plaintiff also left messages for her Union representative, Pete Storah which were neglected. *See* Compl. 22. Defendant Peterson's conduct had ultimately led to Plaintiff's complaint being filed with the EEOC. It was Defendant Peterson who created the hostile work environment for Plaintiff because he was retaliating against Plaintiff for having his friend Daniel Williams investigated and suspended for sexual harassment. Therefore, Defendant Peterson left Plaintiff with no other choice.

Plaintiff, at the time the initial complaint was filed with the Equal Employment Opportunity Commission ("EEOC") had no outside legal counsel and a high school education. Plaintiff was following the direction and instruction that was provided to her through the EEOC. Plaintiff, with a high school diploma, is not knowledgeable in the area of law nor the common practices of the EEOC when filing a sexual harassment complaint. The only knowledge and direction Plaintiff had was what was provided to her through the EEOC. Plaintiff was unaware of how specific she would need to be on the intake questionnaire as well as the charge Plaintiff filed with the EEOC. Plaintiff was also unaware of the type of wording that needed to be used to sufficiently express her problem.

The cause of actions on which this case is based is underlined by sexual harassment in the workplace, however, the inherent nature of Plaintiff's complaints also lend themselves to a classification as race discrimination and the creation of a hostile work environment. Defendant's claim that each of the causes of actions stated in the complaint, contain a retaliation claim, is not true. Plaintiff's complaint states a retaliation claim in the first, second, fourth and fifth causes of action. Defendants also neglect the fact that the basis of this complaint was also specifically pled in the facts of the complaint and incorporated by reference in each and every cause of action.

Furthermore, Defendants use of their cited cases is at the least misleading to the court. The

cited cases in Defendant's motion to dismiss is incorrectly applied and Defendants misconstrue the cases to state legal conclusions and law that are not only misleading but are incorrect applications of law.  Also, Plaintiff is still waiting to receive the Answer to the filed Complaint.  Defendant's cannot answer the Plaintiff's complaint without conceding to the outrageous conduct or committing perjury.

## ARGUMENT

I. **THE FACTS THAT ARE ALLEGED IN THE COMPLAINT ESTABLISH A PLAUSIBLE CLAIM AND THEREFORE A MOTION TO DISMISS IS NOT APPLICABLE**

The Defendants allege that when applying Federal Rules of Civil Procedure 8(a) as well as 12(b)(6) there is a plausibility test that needs to be applied in order to over come a Motion to Dismiss. The Unites States Supreme Court has held, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009).  The proper application of this plausibility test is, "the plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 556 (2007).  The facts of this case are,  sufficiently and specifically alleged with particularity to overcome this standard and the Motion to Dismiss.

Even assuming that the Plaintiff's word alone may not be enough to establish what the court may deem as well pled facts.  The Plaintiff's pled and verified facts when coupled with the factual basis surrounding the circumstances of the initial sexual harassment suit involving Defendants' friend and employee Daniel Williams and statements given by other employees who not only heard the comments that Defendant made but had experienced harassment directly from Defendant Peterson as well is more then enough.

On a Motion to Dismiss the facts and circumstances requires a broad view of the totality of the circumstances. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993).  Also, Courts are particularly cautious when an employer's intent may be involved, the simple fact of the matter is that any direct evidence of an employer's discriminatory intent will <u>rarely</u> be found.  *Gallo v. Prudential Residential*

*Servs., Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir. 1994). Therefore, all evidence must be evaluated and scrutinized for circumstantial proof that would show discrimination. *Id.* Therefore, all of Plaintiff's evidence needs to be evaluated. After evaluating all the evidence, Defendant Peterson's intent is more then evident.

Also, "to survive a motion to dismiss under Rule 12(b)(6), a Title VII complaint need not plead facts sufficient to defeat summary judgment. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511(2002). "At the pleading stage, we consider whether the factual predicate that is pleaded, include(s unlawful discrimination) among the realm of plausible possibilities." *Bell Atlantic Corp., v. Twombly,* 127 S. Ct. 1955, 557(2007). Meaning that not only does the court evaluate all the possibilities that could occur but also the ability for unlawful discrimination to be encompassed in those possibilities.

Here, evaluating the circumstances and evidence as a whole, there is no question that Defendants not only harassed Plaintiff but were in fact creating a hostile work environment by retaliating against her for filing her previous sexual harassment claim against Williams. There is documentary evidence that Plaintiff herself has provided as well as statements by other co-workers who have witnessed and experienced such harassment.

Stated otherwise, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft*, 129 S. Ct. at 1950. It is well understood that when a motion to dismiss has been filed, all the evidence must be viewed in a light most favorable to the non-moving party. Sufficient factual allegations are laid out in Plaintiff's complaint. This case does not deal with an isolated incident involving Defendants, rather a cumulative and continuing series of events where Defendants have verbally harassed and tormented Plaintiff, made her working situation not only hostile but also unbearable reaching the point that Plaintiff was fearful of her physical safety and only by Plaintiff's own conduct in avoiding Defendants did the circumstances not escalate further.

Defendants argue that Plaintiff's allegations are nothing more then speculative. Quite to the

contrary, there is nothing speculative about Plaintiff's concerns and complaint. Plaintiff has not only experienced verbal harassment from the Defendant but others have witnessed such statements as well as experienced them as well. There is nothing speculative about factual situations and documented evidence. These are not mere hypothetical's and self manifested insecurities. The EEOC does not issue Right to Sue letters based on hypothetical insecurities and implausible allegations and Defendant Xerox does not suspend supervisors for no uninvestigated guilt-free reason.

For all the reasons stated above, Plaintiff has stated facts and circumstances which are sufficient to overcome Defendant's motion to dismiss based on the allegation that there is not a plausible claim on which relief can be sought. This is Defendants attempt to avoid what they refused to remedy.

II.     **THIS COURT MUST NOT DISMISS PLAINTIFF'S FEDERAL AND STATE EMPLOYMENT DISCRIMINATION CLAIMS AGAINST SAMUEL PETERSON BECAUSE HE IS PLAINTIFF'S EMPLOYER.**

When dealing with a Title VII claim an "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. 2000e(b). The United States Supreme Court has also held that when evaluating the word "employer" a Title VII case the definition given in 42 U.S.C. 2000e(b) includes agents. *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 72 (1986). Defendant Peterson would be classified as an agent for, and is employed by, Defendant Xerox. Defendant Peterson supervised employees who were his subordinates as well as carry out the instructions and needs of his superiors. Under an agency relationship, an agent will carry out the will and directions of the Principal. That is exactly the type of relations that exists between Defendant Peterson and Defendant Xerox. For Defendants to argue that Xerox itself is an employer is absurd. Xerox is a corporate entity, there are individuals who work at the corporation who allow the corporation to function. Individuals hire, fire, and make work schedules, Xerox itself does not do these type of day to day business functions. These conditions are sufficient to establish the "master/servant" relationship.

Defendant Peterson was Plaintiff's direct supervisor.  Defendant Peterson had a direct effect on Plaintiff's work performance as well as her ability to be promoted and demoted.  Defendant Peterson reminded Plaintiff of his "pull" with the company.  Defendant Peterson used his superiority over the Plaintiff to intimidate her and to harass her.  Plaintiff, fearful of losing her employment and further aggressive harassment attempted to avoid Defendant Peterson to no avail.  Plaintiff, following the companies proper chain of command, would directly have to deal with Defendant Peterson every work shift that Plaintiff and Defendant Peterson were present.  Defendant Peterson took pride in knowing that he was for no valid reason, adding unnecessary stress to Plaintiff's work environment.

Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C 2000e-2(a)(1).  Plaintiff was targeted by Defendant Peterson because of the sexual discrimination claim she had against Defendant Peterson's friend, Daniel Williams.

Defendants also claim that Defendant Peterson does not qualify as an employer as defined by the Human Rights Law.  This argument is made in bad faith, Section 292 of the Human Rights Law defines an employer as "the term employer does not include any employer with fewer than four persons in his employ."  The filed complaint sets out that Defendant Peterson was the supervisor of a team of individuals.  Four individuals are listed as witnesses to events that Plaintiff believes she was discriminated against.  Three out of those four share the same job title as Plaintiff herself which would indicate that Defendant Peterson was their supervisor as well.  *See* Compl. Exh. A.  Those three individuals as well as Plaintiff equal four employees, which were under Defendant Petersons control.  Moreover, Defendant Xerox is an international Corporation with thousands of employees and Defendant Peterson is an employee, supervisor and/or agent of Defendant Xerox.

This Court should therefore dismiss Defendants argument that Defendant Peterson cannot be

classified as an "employer" in regards to Plaintiff under the facts and circumstances of this action.

### III. PLAINTIFF'S FEDERAL RACE AND NATIONAL ORIGIN CLAIMS AGAINST DEFENDANTS MUST NOT BE DISMISSED IN THEIR ENTIRETY BECAUSE PLAINTIFF DID NOT FAIL TO EXHAUST HER ADMINISTRATIVE REMEDIES.

Defendants argue that in order for the Plaintiff to bring an action against the Defendants, she must first file a complaint against them with the EEOC for that charge. Plaintiff may not have filed an individual complaint with the EEOC against Defendant Peterson but she did name him specifically in her complaint with the EEOC as well as on Plaintiff's intake sheet with the EEOC. *See* Compl. Exh. A and B. Xerox is Plaintiff's primary employer and Peterson acts as an agent supervisor for Xerox placing both Defendants on notice of the charges. Defendants also argue that there is nothing in the charge itself that would place Xerox on notice that Plaintiff was complaining of discrimination or harassment based upon her race or national origin. Defendants were contacted on several occasions by the EEOC and Defendant Xerox may have conducted its own internal investigation that the claims filed by Plaintiff are sufficiently specific as to the conduct of Defendant Peterson to place both Defendants on notice. There are comments eluding to discrimination based on race on Plaintiff's intake sheet with the EEOC. *See* Compl. Exh. A. Xerox did have notice of such claims, and to argue otherwise is false and in bad faith.

Plaintiff had not only made complaints to Xerox directly complaining of Defendant Petersons inappropriate comments and conduct but Plaintiff also called the ethics hotline at Xerox, which was ineffective and went completely unanswered by Xerox. Furthermore, Plaintiff's intake sheet with the EEOC makes specific statements relevant to both Plaintiff's sex and race. *See* Compl. Exh. A. Plaintiff was not the only person working under Defendant Peterson, who experienced discriminatory comments based on race. Otis Knight, informed Plaintiff that Defendant Peterson commented on how he would like to fire all the black people in Xerox. *See* Compl. 29. This is just one example among many others that are noted in Plaintiff's Complaint.

Plaintiff's Complaint with the EEOC was filed on October 31, 2008. *See* Compl. Exh. B.

Defendant Peterson did not become Plaintiff's supervisor until January of 2007 which is well within the 300 day limit for filing a complaint with the EEOC and the harassment and discrimination that was experienced.  As for the argument that the claim should fail against Xerox, the courts have established a continuing violation exception.  The continuing violation exception is applicable to the "normal knew-or-should-have-known accrual date of a discrimination claim when there is evidence of an ongoing discriminatory policy or practice." *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 713(2d Cir. 1996).  In such a situation, the existence of such continuing discriminatory practice or policy may delay the commencement of the statute of limitations period until the last discriminatory act in furtherance of such an action occurred.  *Gomes v. Avco Corp.,* 964 F.2d 1330, 1333(2d Cir. 1992).  Although Defendant Peterson is no longer Plaintiff's direct supervisor he continues to be a supervisor in Plaintiff's building of employment and Plaintiff continues to avoid Defendant Peterson.  Plaintiff experienced sex and racial discrimination which stemmed directly from Plaintiff's sexual harassment complaint concerning, Daniel Williams.  Because the harassment and discrimination stemmed from such a complaint, the continuing violation exception applied to Defendant Xerox.  Therefore, Defendant Xerox is not protected by the statute of limitation.

    Furthermore, Plaintiff received the Right to Sue from the EEOC which specifically states that the Plaintiff has 90 days to bring suit.  *See* Compl. Exh. C.  Again, Plaintiff was well within her time frame.  There has been no violation of the statute of limitations on any of the Plaintiff's claims.  Plaintiff is therefore not time barred from bring any such action against the Defendants.  Also, Plaintiff's complaint is sufficient to place Xerox on notice of all Plaintiff's complaints and allegations against them.

    For these reasons, Defendants argument that Plaintiff's claims of Title VII race and national origin claims should be dismissed is unfounded in law and fact and cannot be granted.

IV. **THIS COURT MUST NOT DISMISS PLAINTIFF'S TITLE VII SEX DISCRIMINATION AND HARASSMENT CLAIMS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.**

Defendants argue that because Defendant Peterson was not specifically named in the EEOC complaint as a Defendant, Xerox was not put on notice that Plaintiff was asserting that she was being harassed or discriminated against because of her sex. This is entirely untrue. It is true that on the charge/claim of discrimination sheet that was filed with the EEOC the retaliation box is checked. However, in a comment box it is specifically stated that Plaintiff was subject to a hostile work environment, and that Defendant Peterson specifically told Plaintiff that Defendant Peterson was harassing Plaintiff because she had previously filed a sexual harassment complaint against Defendant Peterson's friend, Daniel Williams. *See* Compl. Exh. B.

Moreover, Plaintiff had made several previous attempts to complain internally to the company about the harassment she was experiencing from Defendant Peterson. Plaintiff did file a grievance with her union representative, Ron Johnson, which has languished and still has yet to be addressed. *See* Compl. 18. Plaintiff had also called the Xerox ethics hotline to report situations that had arose. *See* Compl. 22.

Between the initial sexual harassment complaint against Daniel Williams and the many complaints that followed against Defendant Peterson that Plaintiff had filed, Defendant Xerox had effectively been placed on notice. The complaint itself that was filed with the EEOC specifically requests the reason Plaintiff was filing her complaint. Plaintiff had never previously filed a complaint with the EEOC. Plaintiff is unfamiliar with the procedures and the appropriate boxes to check when filling out the paperwork. Also, Plaintiff had little to no assistance from the EEOC and should not be faulted for simple administrative matters when Plaintiff has complied with all requests by the EEOC in good faith considering her inexperience and minimal education.

Plaintiff followed what little directions that were given to her by the EEOC, staff, if any, while she was filling out her complaint against Defendants Peterson and Xerox. It was Plaintiff's

understanding and belief that by filing a retaliation claim it encompassed her sexual harassment claim as well because that was the basis for Defendant Peterson's discriminatory and harassing actions. She was never guided and advised by anyone. The purpose of this procedure is to assist and resolve issues not to establish barriers to Plaintiffs.

Plaintiff believed she was experiencing retaliation from Defendant Peterson due to her earlier sexual harassment claim against Daniel Williams. To Plaintiff's knowledge that was why she was being targeted and was experiencing this type of harassment and discrimination at work. Plaintiff's knowledge and belief is based on the fact that Defendant Peterson, specifically told Plaintiff and made comments to other people at work that he would make "her pay" for what she had done to his friend Daniel Williams.

For all the reasons stated above the Defendants Motion to Dismiss Plaintiff's Title VII sex discrimination and harassment claim for failure to exhaust administrative remedies must be dismissed.

V.  **THIS COURT SHOULD NOT DISMISS PLAINTIFF'S TITLE VII AND HRL DISCRIMINATION CLAIMS ON THE GROUNDS THAT THEY ARE LEGALLY INSUFFICIENT TO STATE A PLAUSIBLE CLAIM FOR RELIEF.**

The complainant in a Title VII action carries the initial burden of establishing a prima facie case showing discrimination. This can be accomplished by showing (1) that complainant belongs to a protected class; (2) that complainant applied and was qualified for the job in which he applied; (3) there was an adverse employment action; and (4) the circumstances supporting an inference of discrimination. *McDonnell Douglas Corp., v Green,* 411 U.S. 792, 802(1973).

Plaintiff can and does establish that she is part of a protected class both as an African-American and a female. Plaintiff was being penalized and harassed by Defendant Peterson due to the fact that she brought a sexual harassment claim against his friend Daniel Williams. Defendant Peterson also targeted Plaintiff because of her sex. On several different occasions Defendant Peterson told Plaintiff that because she was a woman she was to be seen and not heard. Defendant Peterson believed that he

needed to be respected and obeyed by Plaintiff, simply because she was a woman. And as an African-American was told by Defendant Peterson that Plaintiff needed to have a more slave like mentality.

An adverse employment action is seen as a "materially adverse change" in the terms and conditions of employment. *Galabya v. New York City Bd. Of Educ.,* 202 F.3d 636, 640 (2d Cir. 2000). All examples of an adverse employment action are "unique to a particular situation." *Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 466 (2d. Cir. 1997). In this case, Plaintiff not only suffered a tense work environment, but Plaintiff was denied available overtime. *See* Compl. 17. Defendant Peterson also made it difficult for Plaintiff when she needed to go and pick up her checks when they were late through no fault of her own. *See* Compl. 21. The examples chosen by the Defendants to illustrate adverse employment are minimal and inadequate.

Plaintiff is contesting Defendant Peterson's behavior revolving around that situation. And by behavior, Plaintiff means not only Defendant Peterson's physical presence/body language and demeanor but also his verbal tone and expressions. Furthermore, Defendant Peterson threatened that Plaintiff's job would be eliminated and also verbally harassed Plaintiff on a regular basis. *See* Compl. 23. Plaintiff was always placed at a disadvantage as compared to her other co-workers when it involved her supervisor, Defendant Peterson.

Defendant's in their argument against an adverse employment action picked the most minimal points of Plaintiff's complaint and ignore Plaintiff's more substantial complaints. The Defendants are deliberately avoiding the elephant in the room and are trying to make light of the grave situation that their client has created. It is the cavalier mentality that pervades Defendant Xerox's business and Defendant Peterson's mind set which gave rise to this action. It is Defendant Xerox's inaction, internally, that brought about the action and now Defendant's counsel wishes to place fault with the victim. The relevant facts are that Defendant Peterson had made comments about Plaintiff's actions and his willingness to "spank her" as punishment. Defendant Peterson told Plaintiff she needed to have more of a "slave mentality" when working. Defendant Peterson also made comments to Plaintiff about

"nappy headed-hoes." Defendant Peterson made direct comments relevant to Plaintiff's sex and race. All of which directly affected Plaintiff's work environment and her ability to perform her job. For all of the reasons stated above it is clear that there is sufficient evidence to establish a plausible claim for relief under Title VII as well as the HRL.

Defendants also argue that the adverse employment requirement is not met because, Defendants are aware that if such requirement is met then the burden shifts to them. "The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the employee's complaint. *McDonnell Douglas Corp., v. Green,* 411 U.S. 792, 802(1973). The reality is that the Defendants know if this burden were to shift to them, they will be unable to provide the court with such an explanation as is evident by Defendants making this Motion to Dismiss as opposed to answering the pleading, allowing discovery and filing a summary judgment motion, if they believe they have facts sufficient to support such a motion.

## VI. PLAINTIFF'S CLAIM OF A HOSTILE WORK ENVIRONMENT MUST NOT BE DISMISSED AS PLAINTIFF'S CLAIM ARE PLAUSBILE UNDER ALL THE GIVEN CIRCUMSTANCES.

When the court is evaluating a claim based upon allegations of a hostile work environment, there are many things that the court must take into account. First, whether or not a work environment would be considered hostile is based on an objective standard. Whether a reasonable person under similar circumstances would consider the work environment to be hostile and abusive. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 368(1993).

Also, when the court is deciding if there is a hostile work environment the court must "look at all the circumstances, which may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 369.

Defendants argue that the complaint is void of sufficient facts to establish a hostile work

environment.  Clearly Defendants have not sufficiently read the filed complaint or looked at the attached exhibits in their entirety.  Even prior to Defendant Peterson becoming Plaintiff's supervisor, Defendant Peterson made comments in an effort to intimidate Plaintiff to terminate the sexual harassment investigation against his friend Daniel Williams.  Defendant Peterson confronted Plaintiff about his friend being suspended from work and vocalized his disapproval of the outcome of the investigation.  *See* Compl. 9.  Then on or about January 2007 Defendant Peterson became Plaintiff's supervisor.  It was then that Defendant Peterson also told Plaintiff that she should have more of a "slave mentality" and that like most other women she should be seen and not heard.  *See* Compl. 11.  Defendant Peterson had also made comments to Plaintiff as well as other co-workers that he was told by his supervisor to "corral the animals" and that he was going to start with Vanessa.  *See*  Compl. 12.  Defendant Peterson had also made a comment about how he heard a comment of "nappy headed hoes" made on the radio and that the comment "was right on the money for some females."  *See* Compl. 15.  Plaintiff is an African-American female, so it is clear as to why that comment would especially be seen as offensive to her.

     Plaintiff was also denied available overtime throughout the month of June in 2007, at her place of employment because she was told that Defendant Peterson did not want her there.  *See* Compl. 17.  Also, Defendant Peterson on April 22, 2008 told Plaintiff that she should not bother calling the ethics hotline when it came to complaining about him because the complaints went to  Ken Darin who was "his boy and that's who put him into his management position."  *See* Compl. 27.

     The court must view all the circumstances when evaluating a possible hostile work environment.  The Court must take into account the comments that were not directly made to Plaintiff but directly involved Plaintiff and were made known to Plaintiff.  In May of 2007, Defendant Peterson made a comment to Shirley Jones about how he would pay Plaintiff back for the things that had happened in the past to his co-workers referring to incident involving Daniel Williams.  *See* Compl. 16.  Also, in July of 2007, Defendant Peterson told Mike Brown and John Cruz, that he was going to

eliminate Plaintiff's job. *See* Compl. 19  Then a co-worker, Crystal Smith told Plaintiff, that Defendant Peterson told her that Plaintiff needed to learn how to respect men and their titles and that he would take her into his office and spank her. *See* Compl. 20

Defendant's further argue that these are isolated incidents.  Clearly, as mentioned above these were not isolated incidents.  There was a culmination of comments made directly to Plaintiff and comments made to others that were retold to Plaintiff which made her work environment stressful tense and filled with anxiety and placed her in fear of job loss and physical harm.  The basis for all of this animosity towards Plaintiff revolves around the fact that Plaintiff filed a sexual harassment complaint against Defendant Petersons friend Daniel Williams.  No person should have to go to work and suffer the assault and repercussions for simply trying to keep themselves safe from unwanted sexual advances, harassment and assault by person charged with their supervision and care.

No reasonable person would want to go work for a place where they are constantly being told that their work position is going to be eliminated due to an exercise of their legal rights.  Nor does someone want to be told that because she is a female she needs to be subordinate to males and whatever comments they deem as appropriate.  That not only creates a very tense and stressful situation but it creates anxiety and fear in the employee, no reasonable person would want to deal with that on a daily basis.

Therefore, Plaintiff's hostile work environment claims must not be dismissed.

**VII.   PLAINTIFF'S CLAIM OF NEGLIGENT SUPERVISION AND RETENTION CLAIMS MUST NOT BE DISMISSED.**

Defendants argue that Plaintiff is barred from bringing a negligent supervision and retention claim because of the New York Workers' Compensation Laws.  Although, Plaintiff was injured due to the wrong doing of another employee, not in such a manner that would invoke workman's compensation.  Plaintiff never sustained a physical injury that prevented her from working.  At the time for Plaintiff to do so, Defendant Peterson would have had the ability to terminate Plaintiff.  In fact,

Plaintiff never took time off of work, if she had then the Workers' Compensation Laws may be applicable but in no manner should be a bar to Plaintiff's action. Such an outlandish argument is does nothing but waste the courts time and misrepresent the law to mean that which it does not or should not intend.

Plaintiff did suffer non-physical injuries from Defendants Xerox and Peterson. However, the manner in which Plaintiff was forced to address the circumstances would not invoke Workers' Compensation Laws. Therefore, Defendants cannot argue under such grounds. If such a claim is filed Defendants may argue offset.

Furthermore, Plaintiff is not arguing that Defendant Peterson was negligent in supervising himself, but rather that he was negligent in supervising his employees and that Defendant Xerox was negligent in supervising Defendant Peterson. Defendant Peterson was not looking out for his staff's best interests, but rather his own and that of Defendant Xerox. As soon as Peterson became Plaintiff's supervisor in 2008 Defendant Peterson had his own agenda to torment and harass the Plaintiff through his job title and power over her all with the knowledge and consent of Defendant Xerox.

## CONCLUSION

Throughout this brief it is clear that Plaintiff's claims cannot be dismissed. There are sufficient grounds to overcome the Defendants Motion to Dismiss. The majority of cases that are stated throughout this brief are cases in which the Defendants have cited but have twisted and manipulated to apply incorrect to the case at hand. All of which is misleading to the court.

For the reasons stated above, Plaintiff respectfully requests this Court deny the Defendants Motion to Dismiss in its entirety and issue an order requiring Defendants to serve an answer within 20 days of said order.

Date:   June 13, 2010
        Rochester, New York

                                                                                    _____
                                                                                    Joseph F. Dinolfo, Esq.
                                                                                    Dinolfo Law Offices, LLC
                                                                                    807 Ridge Road, Suite 203
                                                                                    Webster, New York 14580
                                                                                   (585) 347-4305 Ext. 111

                                                                                  *Attorney for Plaintiff*
                                                                                  *Vanessa Patterson*