UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VANESSA PATTERSON,

                    Plaintiff,                          10-CV-6097T

          v.                                            DECISION
                                                        and ORDER
XEROX CORPORATION and
SAMUEL PETERSON,

                    Defendants.

_____

## INTRODUCTION

Plaintiff Vanessa Patterson ("Plaintiff") commenced this action against Xerox Corporation ("Xerox") and Samuel Peterson ("Peterson"), hereinafter collectively "Defendants," pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to e-17 ("Title VII"), and the New York State Human Rights Law ("HRL"), New York Executive Law § 290 et. seq., for discrimination based upon Plaintiff's national origin, race and gender. In particular, Plaintiff asserts that she was harassed and subjected to a hostile work environment at the hands of Peterson in retribution for complaints Plaintiff made against another co-worker, a friend of Peterson's. In addition, Plaintiff asserts a common law cause of action for negligent supervision and retention of an unfit employee, namely Peterson.

Defendants move to dismiss Plaintiff's Complaint ("Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Defendants' Motion to Dismiss" or "Defendants' Motion") on the

grounds that: (1) Peterson is not an "employer" within the meaning of Title VII or the HRL and therefore cannot be held individually liable for employment discrimination; (2) Plaintiff failed to exhaust her administrative remedies, and therefore, to the extent that her Complaint alleges claims not specifically identified in the Charge filed with the Equal Employment Opportunity Commission ("EEOC"), such claims are untimely, procedurally and jurisdictionally barred; and (3) even if not barred, Plaintiff's claims are legally insufficient to state a plausible claim for relief. Defendants further assert that Plaintiff's negligence claims must be dismissed on the basis that they are prohibited by the exclusivity of New York Worker's Compensation Law ("WCL"), and moreover, Peterson cannot be found liable for negligently supervising and retaining himself.

Plaintiff opposes Defendants' Motion claiming, *inter alia*, that the Complaint pled facts in sufficient detail to satisfy the pleading standards set forth in the Federal Rules of Civil Procedure and states plausible claims against Defendants for discrimination and retaliation. Moreover, Plaintiff asserts that her Charge to the EEOC (which is attached to the Complaint as an exhibit), coupled with her repeated internal complaints to Xerox management and union representatives, provided Defendants with sufficient notice of the nature and extent of Plaintiff's claims so as to overcome any purported defects in her EEOC filing.

For the reasons set forth below, Defendants' Motion is granted in-part and denied in-part.

**<u>BACKGROUND</u>**

The Complaint alleges six causes of action against the Defendants for sexual harassment, discrimination, retaliation and hostile work environment based upon Plaintiff's national origin, race and gender under both federal and state law, as well as for common law negligence. <u>See</u> Complaint ("Compl.")¶ 36. The Complaint alleges the following facts which are presumed to be true for the purposes of the Court's analysis of Defendants' Motion.

Plaintiff Vanessa Patterson is an African-American woman born in the United States. She has been an employee of Xerox since January, 28, 1991, and continues to be employed there at least through the date of the Complaint.

In or about April 2000, Plaintiff filed a sexual harassment complaint with Xerox against a co-worker, Daniel Williams ("Williams"). Xerox subsequently issued warnings to both Plaintiff and Williams. Six months to a year later, Plaintiff was allegedly harassed by Williams for a second time and Williams was suspended for three days while Xerox conducted an investigation. During this time, Peterson, then Plaintiff's co-worker, expressed to the Plaintiff that, "he was not happy with what happened to [Williams] and [] it was wrong and he did not agree with [Williams'

suspension]." (Compl. ¶9). As a result, Plaintiff felt uncomfortable around Peterson and Williams and avoided them.

Around January 2007, Peterson was promoted from union employee to custodial supervisor and was assigned to supervise Plaintiff's work group. During 2007, Plaintiff alleges that she suffered hostility at daily shift meetings and was "often verbally attacked and threatened" by Peterson. (Compl. ¶ 12).

Plaintiff asserts that Peterson was the primary offender and source of the allegedly discriminatory and hostile statements. Among the allegations, Peterson is claimed to have said that he needed to "corral the animals, and he was going to start with [Plaintiff]" (Compl. ¶12). Further, Peterson purportedly boasted to Plaintiff and others that he could do anything to the employees he wanted and management would support him. (Compl. ¶¶ 12, 21, 27).

Specifically, Plaintiff alleges Peterson told her that she should have more of a "slave mentality," and that "like most women [] [she] should be seen and not heard." (Compl. ¶11). In April 2007, Peterson purportedly made reference radio talk show host Don Imus' remarks about "nappy headed hoes" and how it "was right on the money for some females." (Compl. ¶ 15).

The Complaint also details instances when Peterson allegedly told Plaintiff that she was "on his shit list" for the incidents with Williams and he would "make her life hell," and he apparently told another employee he would "pay [Plaintiff] back for things

that happened back when they were co-workers." (Compl. ¶16, 21). Peterson is alleged to have told Plaintiff she "needed to learn respect for his title," (Id.), and he apparently told others that he would "spank" Plaintiff if she didn't "learn to respect men and their titles." (Compl. ¶20). Plaintiff claims that Peterson tried to bully another of her co-workers and told him that he "would like to fire all the black people in Xerox." (Compl. ¶29).

In addition to the remarks, Plaintiff alleges Peterson denied her overtime, obstructed her from picking up a missing paycheck, singled out or set Plaintiff up for repeated criticism of her work, threatened to fire her or eliminate her job, and applied different standards to the Plaintiff with regards to working without supervision. Plaintiff repeatedly complained to union representatives, Xerox management and lodged complaints with the "Ethics Line," an internal mechanism set in place by Xerox about Peterson's alleged harassment; but Plaintiff's attempts to use Xerox's channels to redress the situation was unsuccessful.

Plaintiff claims that due to the hostility and aggression, mainly at Peterson's hands, she is in constant "fear, anxiety and stress on a daily basis." (Compl. ¶33).

On August 17, 2008, Plaintiff filled out an Equal Employment Opportunity Commission ("EEOC") Intake Questionnaire against Xerox alleging discrimination based on sex and retaliation. (Compl.

Ex. A)[1].  This questionnaire contained specific reference to Peterson as the primary source of the harassment against her.  The questionnaire details several of the alleged remarks, including the "slave" remark, and Plaintiff's concerns for her job and safety due to Peterson's threats, comments regarding the futility of calling the Ethics Line, and a "hostile environment." Id.

On October 31, 2008, Plaintiff presented a Charge of Discrimination (the "Charge") to the EEOC alleging retaliation. (Compl. Ex. B).  Specifically, the Charge mentioned hostile work environment, retaliation due to the original sexual harassment incident in 2000 and intimidation attempting to keep her from filing complaints against Peterson. Id.  She also complained that her supervisor (Peterson) threatened to spank her and threatened her job. Id.

On May 1, 2009, the Buffalo Local Office of the EEOC issued a letter to Xerox stating a determination that Plaintiff had suffered retaliation for making a claim against her supervisor in 2008. (Compl. Ex. C).  The EEOC concluded that this was not an isolated incident as Plaintiff was retaliated against in 2000 by the issuance of a warning against her after she complained about

_____

[1] The Court may consider documents and attachments that are referenced in the complaint, documents and attachments that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir.2002); see also, Taylor v. Vermont Dep't of Educ., 313 F.3d 768, 776 (2d Cir.2002); Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir.1991).

Williams. Id.  The EEOC invited the parties to discuss settlement.
Id.

In November 2009, the EEOC issued a Notice of Right to Sue,
stating that the "EEOC found reasonable cause to believe that
violations of the statute(s) occurred []" (Compl. Ex. C).  On
February 25, 2010, Plaintiff commenced the instant action against
Xerox and Peterson.

**DISCUSSION**

**I. Legal Standards for Evaluating a Motion to Dismiss**

Defendants move to dismiss Plaintiff's Complaint in its
entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure claiming that Plaintiff has failed to state any plausible
claim upon which relief can be granted.

It is well settled that in deciding a motion to dismiss under
Rule 12(b)(6), the court must "accept . . . all factual allegations
in the complaint [as true] and draw . . . all reasonable inferences
in the plaintiff's favor." See Ruotolo v. City of New York, 514
F.3d 184, 188 (2d Cir. 2008) (internal quotation marks omitted).
In order to withstand dismissal, therefore, a "complaint must
contain sufficient factual matter, [], to 'state a claim to relief
that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937,
1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544,
570 (2007)(disavowing the oft-quoted statement from Conley v.
Gibson, 355 U.S. 41 (1957), that "a complaint should not be

dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[2], a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and [more than] a formulaic recitation of the elements of a cause of action []." Twombly, 550 U.S. at 555 (internal quotation marks omitted); see also, Iqbal, 129 S.Ct. at 1949 ("Legal conclusions" need not be accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice") (citation omitted). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S.Ct. at 1949.

Thus, "at a bare minimum, the operative standard requires the plaintiff [to] provide the grounds upon which [her] claim rests through factual allegations sufficient to raise a right to relief

---

[2] "To survive a motion to dismiss, a plaintiff alleging employment discrimination or retaliation is not required to plead facts sufficient to establish a *prima facie* case." Krasner v. HSH Nordbank A.G., 680 F.Supp.2d 502 (S.D.N.Y. 2010)(citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, 515(2002); Williams v. N.Y. City Housing Auth., 458 F.3d 67, 72 (2d Cir. 2006)(internal parentheticals removed). "Rather, the 'ordinary rules for assessing the sufficiency of a complaint'[apply]". Id. (internal citations omitted). This requires only a "'short and plain statement of the claim,' with sufficient factual 'heft to show that the pleader is entitled to relief.'" Id.(quoting Twombly, 550 U.S. at 557).

above the speculative level." Goldstein v. Pataki, 516 F.3d 50, 56-57 (2d Cir. 2008) (internal quotation marks omitted).

## II. Exhaustion of Administrative Remedies

Defendants move to dismiss Plaintiff's First and Second Causes of Action, i.e., all Title VII claims, on the basis that Plaintiff failed to exhaust her administrative remedies.

As an initial matter, before instituting a Title VII action in federal court, a plaintiff must exhaust her administrative remedies by (1) timely filing a charge with the EEOC or a corresponding state agency and (2) receiving a notice of right to sue. See 42 U.S.C. § 2000e-5(f); see Vital v. Interfaith Med. Ctr., 168 F.3d 615, 619 (2d Cir. 1999) ("A complainant must file a charge against a party with the EEOC or an authorized state agency before the complainant can sue that party in federal court under Title VII.") There is no dispute that Plaintiff filed a charge with the appropriate State agency and the 300-day time limitation applies in this case.

### A. Timeliness Of Plaintiff's Claims

Title VII's administrative exhaustion provision requires that any complaint be filed with the EEOC within 300 days of the alleged discriminatory act. See 42 U.S.C. § 2000e-5(e)(1). The statutory 300-day time limit is analogous to a statute of limitations. Nowak v. EGW Home Care, Inc., 82 F.Supp.2d 101, 106 -107 (W.D.N.Y., 2000). Thus, as a general rule, only events that occurred during the 300-day period prior to filing of the administrative complaint

are actionable under Title VII, unless the period has somehow been equitably tolled or extended. Id. (citing Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712-713(2d Cir. 1996)).

"When, as in this case, a plaintiff's allegations of discrimination extend beyond the 300-day limitations period, the nature of the claim determines what consideration will be given to the earlier conduct." Petrosino v. Bell Atl., 385 F.3d 210, 220 (2d Cir. 2004). Although it is well-settled that plaintiff cannot recover for discrete acts of discrimination or retaliation that occur outside the statutory time period,"[h]ostile work environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The unlawful employment practice therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." McGullam v. Cedar Graphics, Inc., 2010 U.S. App. LEXIS 12159, *10-14 (2d Cir. June 15, 2010)(quoting National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002) (internal citation and quotation marks omitted)). Accordingly, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." Id. at *11 (quotation and internal citation omitted); see also Morgan, 536 U.S. at 118

("Given . . . that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment.").

In this case, there is no dispute that Plaintiff filed a charge with the EEOC within 300 days of an act that she asserts is part of a hostile work environment. Plaintiff alleges that Defendants subjected Plaintiff "to an ongoing pattern of discriminatory conduct based on her race and gender" in violation of Title VII (Compl., ¶ 38 et seq.); but the allegations in the Complaint do not state a plausible claim for discrete acts of discrimination.

Plaintiff asserts that Defendants' discriminatory practices essentially stem from complaints she made against another co-worker in 2000. In particular, Plaintiff asserts that the hostile treatment began in January 2007 when Peterson became her work group supervisor (see id.), and through that role until September, 2008 (after she filed her administrative complaint in this case), Peterson allegedly sought retribution against her for the complaints she made against his friend.

While Plaintiff's conclusory allegations as to Defendants' allegedly discriminatory behavior would not be enough for Plaintiff to avoid summary judgment, they are "sufficient to withstand a challenge for failure to state a claim" under Rule 12(b) with

respect to a claim for a hostile work environment.  See Nowak, 82 F.Supp.2d 101, 106 -107 (W.D.N.Y., 2000); Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997).

Accordingly, Defendants' Motion is denied to the extent it seeks dismissal of Plaintiff's Title VII claims of hostile work environment based upon Plaintiff's failure to exhaust administrative remedies.  Note, however, the Complaint (including the attachments) does not contain facts sufficient to state a claim under Title VII for discrete acts of discrimination and/or to allege that Plaintiff received different treatment because of her race, gender and/or national origin.  Indeed, the incidents complained of prior to January 2008 (i.e., when the 300-day time limit began running) can only be considered in determining whether Plaintiff's place of employment was a hostile work environment.

To the extent that Plaintiff's Complaint seeks recovery for discrete acts of discrimination, any incidents prior to January 2008 cannot be considered since such incidents are clearly time-barred. Those incidents detailed in the Complaint that purportedly occurred after January 2008 are not sufficient, in and of themselves, to state a plausible claim for discrete acts of discrimination and/or disparate treatment due to race, gender and/or national origin under Title VII .  _____

**B. Relatedness of Claims to EEOC Charge**

In addition, Defendants move to dismiss Plaintiff's discrimination claims on the basis that the EEOC Charge only

references a claim of retaliation, not discrimination based upon race, national origin or gender. Moreover, Defendants claim that the EEOC Charge fails to specifically identify Peterson, and therefore, is defective.

"Claims not raised in an EEOC complaint [] may be brought in federal court if they are 'reasonably related' to the claim filed with the agency." Williams v. New York City Housing Auth., 458 F.3d 67, 70 (2d Cir. 2006)(citing, Butts v. City of New York Dept. Of Housing Pres. & Dev., 990 F.2d 1397, 1401-1403 (2d Cir. 1993), superseded by statute on other grounds, Civ. Rights Act of 1991, Pub. L.No. 102-166, 105 Stat. 1071). A claim is considered reasonably related "if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." Id. The central inquiry is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on other grounds. See id. "The 'reasonably related' exception to the exhaustion requirement 'is essentially an allowance of loose pleading' and is based on the recognition that 'EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [she] is suffering.'" Id. (quoting Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003)).

Although Plaintiff's charge made to the EEOC only specifically mentions a retaliation claim, her EEOC questionnaire, filled out on

August 17, 2008, contains allegations of both gender and racial discrimination and identifies Plaintiff as an African-American female. (Compl. Ex. A); see also, Marshall v. N.Y. City Bd. of Elections, 322 Fed. Appx. 17, 18 (2d Cir. 2009)(the Court considered both an initial letter to the New York City Commission on Human Rights and the administrative charge in determining whether Plaintiff had failed to exhaust her religious discrimination claim).

Therefore, when considering the Charge made to the EEOC with the claims Plaintiff is attempting to make in her Complaint, the racial and gender discrimination claims based upon a hostile work environment appear to be "reasonably related" to the retaliation claim sufficient to survive this Rule 12(b)(6) motion.

As set forth below, the failure to specifically name Peterson in the EEOC Charge is irrelevant (see Point V, supra).

## III.  Plaintiff's Claim for Hostile Work Environment

Defendants also move to dismiss the First, Second, Fourth and Fifth Causes of Action on the grounds that Plaintiff has failed to state a plausible claim for employment discrimination based upon a hostile work environment[3].  Title VII hostile work environment claims arise, "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult...that is sufficiently severe or pervasive to alter the condition of a the victim's employment and

---

[3] Claims brought under the HRL are analyzed under the same standard as those brought under Title VII. See e.g., Miller Brewing Co. v. St. Div. Of Human Rights, 66 N.Y.2d 937 (1985). Plaintiff's HRL and Title VII claims will therefore be addressed simultaneously. See Lueck v. Progressive Ins., Inc., 2009 U.S. Dist. LEXIS 96492 at *7, n. 2 (W.D.N.Y. 2009).

create an abusive working environment, []." <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21 (1993).

Whether the environment may be considered sufficiently hostile to support a hostile work environment claim is to be measured by the totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether such conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's work performance. <u>See</u> <u>Harris</u>, 510 U.S. at 23. "Mere utterance of an [] epithet which engenders offensive feelings in an employee would not affect the conditions of employment to [a] sufficiently significant degree to violate Title VII." <u>See</u> <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 67 (1986). Similarly, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." <u>Clark County Sch. Dist. V. Breeden</u>, 532 U.S. 268 (2001) (internal quotations makes and citations omitted). In order for "comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of...enmity." <u>Richardson v. NY State Dep't of Correctional Serv.</u>, 180 F.3d 426, 437 (2d Cir.1999).

Further, "Title VII does not prohibit employers from maintaining nasty, unpleasant workplaces...[r]ather it prohibits employers from discriminating against an employee (including by subjecting him or her to hostile working conditions) because of such

individual's [membership in a protected class.]" <u>Krasner v. HSH</u>
<u>Nordbank A.G.</u>, 680 F.Supp.2d 502, 513 (citing 42 U.S.C.
§2000e-2(a)(1)).

Plaintiff alleges Peterson made specific comments to her and
others about her race and gender. Specifically, Plaintiff claims
that almost immediately upon becoming her supervisor, Peterson
demonstrated resentment towards her and told Plaintiff that she
"should have more of a slave mentality" in front of her co-workers.
(Compl. ¶11). According to the Complaint and taking the allegations
as true, Peterson also "repeatedly ma[de] racial, sexual and ethnic
statements...[and] express[ed] dislike, disgust, and disdain for
people of plaintiff's gender and race . . ." both in private and in
public. (Compl. ¶40).

Specifically, the Complaint asserts that Peterson stated that
"his boss told [him] to corral the animals...and [that he was] going
to start with [Plaintiff]." (Compl. ¶12). Further, Peterson
purportedly made comments about women to the effect that they:
"should be seen and not heard;"and "[P]laintiff and other female
workers in the group [should] know that he was a male chauvinist;[4]"
and "nappy headed hoes...was right on the money for some females;"
and "[P]laintiff needs to respect men and their titles." (Compl.

---

[4] "Because a hostile work environment claim "focuses on the nature of
the workplace environment as a whole," evidence of racial and sexual
harassment and hostility beyond what is directed specifically at the plaintiff
is relevant to our analysis. <u>Williams v. Consol. Edison Corp.</u>, 255 Fed. Appx.
546, 549 (2d Cir. N.Y. 2007)(citing <u>Cruz v. Coach Stores, Inc.</u>, 202 F.3d 560,
570 (2d Cir. 2000)).

¶11, 12, 15). In addition to the alleged "slave" comment made by Peterson to Plaintiff, he also allegedly told another worker that he "would like to fire all black people at Xerox." (Compl. ¶29). Peterson also threatened to "spank" the Plaintiff, which she claims caused her to feel fear, experience anxiety and stress on a daily basis. (Compl. ¶33). Plaintiff asserts she became afraid to be alone with Peterson and feared possible bodily harm. (Compl. ¶32).

Accepting all of these allegations as true, as the Court must on a motion to dismiss, the allegations state a claim for a hostile work environment. Accordingly, Defendants' Motion to dismiss Plaintiff's First, Second, Fourth and Fifth Causes of Action for hostile work environment based on race and gender is denied.

## IV. Plaintiff's Retaliation Claim

Similarly, Plaintiff has also pled facts that, when taken as true, state a claim for retaliation.

To state a claim for retaliation, a plaintiff must plead facts "tend[ing] to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007)(citing Feingold v. New York, 366 F.3d 138, 156 (2d Cir. 2004)). The Supreme Court has held that it "reject[s] the standards applied in the Court of Appeals that have treated the [Title VII] antiretaliation provision

as forbidding the same conduct prohibited by the antidiscrimination provision and that have limited actionable retaliation to so-called ultimate employment decisions." <u>Burlington Northern & Santa Fe Ry. v. White</u>, 548 U.S. 53, 67 (2006). Thus, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Id</u>., at 68 (internal quotations omitted). According to the Supreme Court the anti-retaliation provision of the Act is not so limiting as the anti-discrimination provisions and the anti-retaliation provision seeks to prevent the employer from interfering with an employee's efforts to secure or advance enforcement of Title VII's basic guarantees. <u>See id</u>., at 55.

In the instant case, Plaintiff has alleged that Peterson attempted to discourage her from making complaints about him and/or his treatment of her through Xerox's internal channels. Peterson purportedly told her if she "didn't like [his treatment of her], [she] should quit," and that he "could do want [he] want[ed] and say what he want[ed] and the management [would] back [him up]", and "not to bother calling the ethics line to complain because Ken Darin...was his boy." (Compl. ¶27). Peterson also allegedly threatened to eliminate the Plaintiff's job if she tried to complain. (Compl. ¶21-23).

Plaintiff first participated in a protected action in 2000 when she filed a sexual harassment charge against Williams. She did so again when she complained to her union representative regarding Peterson's refusal to grant her overtime and about the incident concerning the missing paycheck. (Compl. ¶21). Using Xerox's "Ethics Hotline" and participating in an internal investigation are also considered protected activities. <u>See e.g.</u>, <u>Gregory v. Daly</u>, 243 F.3d 687, 700-701 (2d Cir. N.Y. 2001)("The law protects employees in the filing of formal charges of discrimination as well as in the making of informal protests of discrimination, including making complaints to management . . .").

The Complaint also pleads facts that demonstrate a causal connection between the protected activities and the adverse actions. Peterson called Plaintiff to his office to issue warnings and stated that Plaintiff was on his "shit list" for the 2000 incident and that "he would make [her] life hell now that he was [her] supervisor." (Compl. 16, 21). This states a casual connection between the harassment and Plaintiff's participation in protected activities.

Moreover, this Circuit has held that "the causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." <u>Cifra v. GE</u>, 252 F.3d 205, 217 (2d Cir. N.Y. 2001)(internal citations and marks omitted). Here, after Plaintiff began complaining to her union representative

or to the Ethics Line, Peterson purportedly told another worker that he was going to "eliminate [P]laintiff's job." (Compl. ¶23).

It is plausible in this case that Peterson's alleged actions may have dissuaded a reasonable worker from making complaints and/or a charge of discrimination, and therefore, state a claim for retaliation. Defendants' Motion to dismiss this claim is denied.

**V. Claims against Peterson**

Defendants further move to dismiss the First and Second Causes of Action as against Peterson on the basis that he is not an "employer" within the meaning of Title VII or the HRL. To the extent that Title VII claims are asserted against Peterson, those claims must be dismissed because his status is Plaintiff's co-employee, not her employer. The HRL claims against Peterson, however, may remain at this stage.

It is well established that "individual defendants with supervisory control over a plaintiff are not subject to personal liability under Title VII." Ziegler v. Adams, 316 Fed.Appx. 52, 52 (2d Cir. 2009); see also, Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995)abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998).

Where as here, although Peterson was Plaintiff's direct supervisor for a time, and his conduct as such may subject Xerox to vicarious liability (see Burlington Indus., 524 U.S. at 754), Peterson, himself, cannot be held liable as an "employer" under Title VII. Accordingly, Defendants' Motion to Dismiss Plaintiff's Title VII claims against Peterson is granted.

Unlike Title VII of the Civil Rights Act, however, individual liability can be imposed under the New York HRL in certain circumstances.  The basis for personal liability turns on whether the individual actually participated in the conduct giving rise to the discrimination claim.  <u>Walter v. Hamburg Central School Dist.</u>, 2007 WL 14809565, *9 (W.D.N.Y. 2007); <u>see also</u>, <u>Tomka</u>, 66 F.3d at 1313 ("Individual defendants may be sued in their personal capacities [under the New York Human Rights Law]"); <u>Nowak v. EGW Home Care, Inc.</u>, 82 F.Supp.2d 101, 109 - 110(" . . . a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the Human Rights Law")(citing <u>Tomka</u>, 66 F.3d at 1313).

Moreover, in the appropriate case, the court shall have supplemental jurisdiction over any other claims in a civil action over which the court has original jurisdiction, so long as the other claims "' . . . are so related to [the] claims [within] original jurisdiction that they form part of the same case or controversy . . . '"  <u>Siddiqui v. United Fin. Mortg. Corp.</u>, 2008 WL 2705517, *2 (W.D.N.Y. 2008)(Telesca)(quoting 28 U.S.C. § 1367(a)).

Here, the exercise of supplemental jurisdiction over the State HRL claims is appropriate since Plaintiff's Title VII claims and the HRL claims are "so related" within the meaning of Section 1367(a) since both the federal and state claims arise out of the same facts and circumstances.  In addition, there is no doubt within the four corners of Plaintiff's Complaint, that Peterson is the main cause of the allegedly discriminatory behavior at issue.  Therefore,

Defendants' Motion to Dismiss the HRL claims against Peterson must be denied.

## VI. Plaintiff's negligence claims

Plaintiff's Third and Sixth Causes of Action assert common-law negligence against both Defendants. Plaintiff claims Xerox and Peterson "failed to take adequate steps to determine the fitness of defendant [sic] Williams and Peterson, failed to adequately supervise same, and deliberately retained same." (Complaint ¶¶53, 76).

These claims must be dismissed against Peterson in particular because Peterson is not his own employer and there is no allegation that Peterson was at anytime William's employer. See Banks v. Yokemick, 177 F.Supp.2d 239, 264 (S.D.N.Y. 2001)("[a] claim [] for negligent hiring and training involved potential liability for the [] employer, but would not be applicable to the individual defendants."). Here, as set forth above, Peterson is neither Plaintiff's employer nor is there any indication he was Williams' employer. In fact, the Complaint makes it clear that Peterson was merely Williams' co-worker at the time Williams' allegedly harassed Plaintiff, and his role as Plaintiff's supervisor beginning in 2007 did not convert him into her employer. In addition, Peterson cannot be held liable for negligently supervising and retaining himself. Therefore, the Third and Sixth Causes of Action asserted against Peterson must be dismissed.

The negligence claims asserted against Xerox must also be dismissed because the New York State Worker's Compensation Law

("WCL") exclusively governs negligence claims against employers. See _Schiraldi v. AMPCO Sys. Parking_, 9 F. Supp. 2d 213 (W.D.N.Y. 1998). Under New York's Worker's Compensation scheme, "psychological or nervous injury precipitated by psychic trauma is compensable to the same extent as physical injury." _Wolfe v. Sibley, Lindsay & Curr Co._, 36 N.Y.2d 505, 510 (1975).

In this case, Plaintiff alleges no specific injuries of this kind, except mental and emotional distress. Nevertheless, if recovery is available for these injuries, it would be under the WCL. _Johns v. Home Depot U.S.A., Inc._, 2005 U.S. Dist. LEXIS 3529, *24-25 (S.D.N.Y. 2005); N.Y. Work. Comp. Law § 11; see also,; _O'Brien v. King World Productions, Inc._, 669 F. Supp. 639, 641 (S.D.N.Y. 1987) ("In New York, recovery for accidental injuries arising out of and in the course of employment, including injuries caused by an employer's negligence, is governed by the Worker's Compensation Law. If recovery is available under this law, an employee may not bring a common-law tort action against her employer; the Worker's Compensation Law provides her exclusive remedy.") Accordingly, Plaintiff's Third and Sixth Causes of Action for common law negligence against Xerox must be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is granted in part and denied in part, as follows:

(1) Defendant Xerox's and Defendant Peterson's Motion to Dismiss Plaintiff's Title VII claims asserted against Peterson is granted with prejudice;

(2)  Defendant Xerox's and Defendant Peterson's
     Motion to Dismiss Plaintiff's Title VII claims
     asserted against Xerox is granted with
     prejudice, except with respect to the claims
     for hostile work environment and retaliation;

(3)  Defendant Xerox's and Defendant Peterson's
     Motion to Dismiss Plaintiff's New York State
     Human Rights Law claims asserted against both
     Defendants is granted with prejudice, except
     with respect to the claims for hostile work
     environment and retaliation;

(4)  Defendant Xerox's and Defendant Peterson's
     Motion to Dismiss Plaintiff's common law
     negligence claims asserted against both
     Defendants is granted with prejudice.

Essentially, all that remains of Plaintiff's claims as alleged in her Complaint are the claims against Xerox for hostile work environment and retaliation under Title VII and the claims against both Xerox and Peterson for hostile work environment and retaliation under the New York State Human Rights Law.

**ALL OF THE ABOVE IS SO ORDERED.**

                     S/Michael A. Telesca
                     _____
                     Michael A. Telesca
                     United States District

DATED: August 2, 2010
       Rochester, New York