UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VANESSA PATTERSON,

Plaintiff,

v.

XEROX CORPORATION and
SAMUEL PETERSON

Defendant.

10-CV-6097
**DECISION and ORDER**

**INTRODUCTION**

Plaintiff, Vanessa Patterson ("plaintiff"), brings this action for employment discrimination and retaliation against her employer, Xerox Corporation ("Xerox") and her former supervisor, Samuel Peterson ("Peterson"), (collectively, "defendants"). In a Decision and Order dated August 2, 2010, this Court granted-in-part and denied-in-part defendants' motion to dismiss. What remains are plaintiff's claims for a hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, ("Title VII") (against Xerox only) and New York State Human Rights Law, New York Exec. Law §§ 290 *et seq.* ("NYSHRL") (against Xerox and Peterson).

Defendants now move for summary judgment on plaintiff's remaining claims, contending that there are no material issues of fact and that they are entitled to judgment as a matter of law.

Plaintiff, now proceeding *pro se*[1], opposes the motion, arguing that there are material issues of fact for trial. For the reasons discussed herein, I find that plaintiff has not established a claim for retaliation or a hostile work environment. Therefore, her complaint is dismissed with prejudice.

**BACKGROUND**

The following facts are taken from the parties' submissions pursuant to Local Rule 56 (a)(Docket Nos. 45, 46) and the entire record in this case, and are viewed in the light most favorable to the plaintiff. Plaintiff is an African American female who is currently employed by Xerox and has worked at Xerox since 1991. Peterson, an African American male, began working at Xerox around the same time as the plaintiff. Plaintiff filed a sexual harassment complaint against a coworker, Dan Williams, in April 2000, and she alleges that Peterson gave testimony on Williams' behalf and that he and Williams were friends. Williams was ultimately suspended for his conduct. Peterson avers that he and Williams were not close friends and that he was not involved in the incident that occurred between Williams and plaintiff in April 2000. He further states that he has no personal knowledge of the incident.

In January 2007, Peterson was assigned to supervise a group of custodial employees, including plaintiff, in Xerox Building 801,

[1] Joseph F. Dinolfo initially represented the plaintiff and drafted the complaint in this action. On August 16, 2011, Magistrate Judge Marian W. Payson granted Mr. Dinolfo's motion to withdraw as attorney for the plaintiff. Plaintiff did not retain new counsel.

located in Henrietta, New York. Plaintiff testified that many members of the work group had problems with Peterson and he held daily group meetings that often turned "ugly and argumentative." Plaintiff testified that she was "harassed" on a daily basis. Although she did not describe this personal harassment in great detail, she submitted evidence of the following comments[2] made by Peterson:

(1) Peterson told other employees that he was a "male chauvinist;"

(2) Peterson suggested that the work group, including the plaintiff, should have more of a "slave mentality;"[3]

(3) Peterson made a comment that he should "corral the animals," referring to the members of the work group;

(4) Peterson made a comment to two of Plaintiff's coworkers that he "would fire all the black people, because they are useless;"

---

[2]Defendants object that the evidence of some of these comments was not submitted in admissible form or is inadmissable hearsay. However, because the Court finds that Plaintiff has not established a claim for a hostile work environment or retaliation even considering this evidence, the Court need not consider defendants' objections.

[3]Plaintiff testified that she was unsure whether this statement was directed at her or at the entire workgroup, although she submitted a statement from a coworker who stated that the statement was made to the entire workgroup at a group meeting. Pl. Dep. at 84; Douglas Henry Declaration at ¶3, Docket No. 46-2.

(5) Peterson joined a conversation regarding the reference to "nappy headed hoes" made by radio host Don Imus, and stated that he did not think Imus should have been fired for the statement;

(6) Peterson told plaintiff's coworker that he would "take [plaintiff] in his office and spank her" because she needed to "learn to respect men and their titles;"

(7) Peterson warned a new employee to stay away from plaintiff;

(8) Peterson criticized Plaintiff's shoes because they were too clean and told her she needed to look more like a cleaner;

(9) Peterson told employees that he could do whatever he wanted and management would back him.

Plaintiff also alleges two separate incidents with Peterson in support of her claim for retaliation.[4] First, on or around March 13, 2008, Xerox mistakenly failed to deposit plaintiff's paycheck into her bank account. She was notified that she could pick up her check at a Xerox office in Webster, New York, about twenty five minutes from Xerox Building 801 in Henrietta, New York. Plaintiff discussed this problem with Peterson, who initially stated that he would pick up her paycheck for her because he lived nearby, but later refused to pick up her check or to allow her to pick up her

[4]Plaintiff initially alleged that Peterson also criticized her work, but she has not responded to defendants' arguments with respect to the alleged criticism, nor has she mentioned these facts in her opposition. Therefore, the Court deems any claim based on work criticism from Peterson abandoned. See e.g. Lipton v. County of Orange, N.Y., 315 F.Supp.2d 434, 446 (S.D.N.Y. 2004).

check because it was going to be available at 2:30 p.m., during work hours. He stated that if she left to pick up her check during work hours he would have to dock her pay. Peterson states that plaintiff told him to pick up her check, rather than asking him, and that he felt that she had spoken to him in a disrespectful manner. Peterson then spoke with his supervisor, Jack Black, who arranged to have plaintiff's paycheck delivered to the Henrietta building by courier.

Peterson states that Black advised him to counsel plaintiff that her conduct was disrespectful. Accordingly, Peterson prepared what he termed a "verbal written warning" on a Labor Report form. He states that he did not intend to issue a formal labor report, but he used the form to summarize what had happened during their confrontation about the paycheck. The "verbal written warning" sets forth the factual circumstances behind the paycheck incident and explains that Black and Peterson agreed that he should "counsel Vanessa for her [behavior] in front of the group." It further states that Peterson "wanted Vanessa to know from this point forward [he] was not going to accept any more disrespect." The report was shown to plaintiff on Peterson's computer, but was not

placed in plaintiff's file.[5] The report did not result in any disciplinary action, loss of employment status or other benefit.

Plaintiff alleges that when she went to Peterson's office to discuss the paycheck issue, he stated that she was on his "shit list" for her complaint against Dan Williams. Peterson denies making this statement. Plaintiff called the internal ethics helpline to complain about this incident. She complained that Peterson was retaliating against her for her April 2000 complaint against Williams.

Later on March 20, 2008, the workgroup and Peterson had decided to come in one hour early so that they could leave one hour early because it was Good Friday. Plaintiff testified that she forgot and arrived to work one hour late. Plaintiff requested to make up this hour after the scheduled work day, but Peterson told her that she could not because there would not be a supervisor there at that time. After discussing the issue with Jack Black, who confirmed that plaintiff should not be allowed to work late, Peterson told her that she could use vacation time or lose an hour's pay. Plaintiff elected to use vacation time. Plaintiff asserts that other employees were allowed to work "special hours"

---

[5]Plaintiff disputes that the report was not placed in her file, stating "[If it] never went into my file, then why was it written." Pl. Resp. to Rule 56.1 Statement of facts at ¶23. However, Plaintiff's disbelief of Xerox's statement that the "verbal written warning" was not placed in her file is insufficient to create a material issue of fact. Plaintiff, admittedly, had no knowledge of whether it was placed in her file or not. Pl. Dep. at 51-2.

or use “flex time” and that she was treated differently. The examples plaintiff offers are two female employees, Sook Cho and Patricia Dinolfo. Cho was allowed to leave work to go to church meetings and Dinolfo was allowed to use flex time to travel to Buffalo.

Plaintiff again called the ethics helpline to complain about Peterson’s treatment. Xerox investigated plaintiff’s complaints, but concluded that Peterson had not violated company policy. Plaintiff then filed a charge of discrimination with the Equal Employment Opportunity Commission (“EEOC”) on October 31, 2008.

**DISCUSSION**[6]

Rule 56 provides that, “[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought. See Scott v. Harris, 550 U.S. 372, 380 (2007). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. See Id. at 380

[6]Plaintiff’s claims under the NYSHRL and Title VII are analyzed under the same standards and the Court will consider them together. See e.g. Patane v. Clark, 508 F.3d 106 (2d Cir. 2007).

(citing Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587).

A. Hostile Work Environment

A plaintiff alleging a claim for a hostile work environment must establish "[1] that the harassment was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment, and [2] that a specific basis exists for imputing the objectionable conduct to the employer." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002). The test to determine whether plaintiff was the victim of a hostile work environment "has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." Alfano, 294 F.3d at 374 (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)). The incidents of which a plaintiff complains "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Carrero v. New York City Housing Auth., 890 F.2d 569, 578 (2d Cir. 1989). The "[m]ere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee would not affect the conditions of employment to a sufficient degree to violate Title VII." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986). In order for "comments, slurs, and jokes to constitute a hostile work environment, there must be more

than a few isolated incidents of racial enmity. Isolated incidents or episodic conduct will not support a hostile work environment claim." Richardson v. NY State Dep't of Correctional Serv., 180 F.3d 426, 437 (2d Cir. 1999), *abrogated on other grounds*. The Court must look at the totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether such conduct is physically threatening or humiliating, and whether such conduct unreasonably interferes with the plaintiff's work performance. See Harris 510 U.S. at 23.

Here, Plaintiff alleges that her workplace was generally "hostile" while Peterson served as the supervisor of her workgroup. She offers evidence that Peterson was antagonistic to the workgroup as a whole and that daily meetings would often turn "ugly and argumentative." Title VII, however, does not establish a "general civility code" for the workplace and the harassment complained of must be based on a protected characteristic, here race or gender. See Oncale v. Sundown Offshore Services, Inc., 523 U.S. 75, 81 (1998). Most of the conduct complained of is unrelated to plaintiff's race and/or gender. Further, most of the comments were directed at the entire workgroup, which consisted of men and women of different races. This evidence is not probative of a hostile work environment based on plaintiff's race and/or gender. See Brown v. Henderson, 257 F.3d 246 (2d Cir. 2001).

In support of plaintiff's claim for a hostile work environment based on her race, the evidence consists of the following comments: (1) Peterson suggested that the work group, including the plaintiff, should have more of a "slave mentality;" (2) Peterson made a comment that he had to "corral the animals," referring to the members of the work group; (3) Peterson made a comment to two of Plaintiff's coworkers that he "would fire all the black people, because they are useless;" (4) Peterson joined a conversation regarding a reference to "nappy headed hoes" made by radio host Don Imus, and stated that he did not think Imus should have been fired for the statement.

The proffered evidence of a hostile work environment based on plaintiff's gender consists of the following comments: Peterson told a coworker that he would "take [plaintiff] in his office and spank her" because she needed to "learn to respect men and their titles;" and he told an employee that he was a male chauvinist. Plaintiff's also offers evidence of two personal incidents with Peterson. First, he refused to let her leave to pick up her paycheck during work hours and later warned her to respect his position as her supervisor. Second, he refused to let her stay late to make up an hour of work when she came in late because no supervisors would be present.

First, while the first two comments ("slave mentality" and "corral the animals") could be construed as racially insensitive,

their meaning is not entirely clear. Because the Court must consider the evidence in the light most favorable to the plaintiff, the Court will assume that these statements carry a racial undertone. However, even considering all four statements to be racially motivated, the Court finds that this conduct does not rise to the level of severity or pervasiveness required to establish a claim for a hostile work environment. There is no evidence of precisely when the alleged comments were made, but Peterson served as the supervisor of plaintiff's workgroup from January 2007 through September 2008, over twenty months. He allegedly made these comments to the entire workgroup or other employees. And plaintiff does not complain of any other discriminatory conduct during her more than twenty years at Xerox, where she is still employed. While these comments are offensive, they were isolated in nature. Further, the severity of this conduct is weakened by the fact that Peterson is also an Africa American.

With respect to plaintiff's claim for a hostile work environment based on her gender, two isolated gender slurs also do not rise to the level of the severity or pervasiveness required to establish a hostile work environment claim. Neither do the two incidents between plaintiff and Peterson regarding her paycheck and lost work hours support her claim for a hostile work environment. Both incidents were race and gender neutral - they were simply personnel issues, unrelated to plaintiff's race or gender.

Further, Peterson responded to the incidents in a manner that was unrelated to plaintiff's race or gender and there is no evidence to indicate that his actions were discriminatory. See Cristoforo v. Lake Shore Cent. School Dist., 2011 WL 1082567, *2 (2d Cir. April 2, 2012)("While facially neutral incidents may be considered among the totality of the circumstances in any hostile work environment claim, there must be a circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory."(internal quotations omitted)); See also Holt v. Roadway Package Systems, Inc., 506 F.Supp.2d 194, 203 (W.D.N.Y. August 21, 2007). The fact that two other female coworkers were allowed on occasion to work "special" or "flex" hours to leave early for church events or travel does not support plaintiff's claim that she was subjected to a hostile work environment because of her race and/or gender, because plaintiff has not presented evidence that she was similarly situated to these female employees in all material respects. See Ruiz v. County of Rockland, 609 F.3d 486, 493 (2d Cir. 2010). Rather, the evidence indicates that plaintiff was not allowed to work late without a supervisor to make up for time missed because she arrived late to work. The employees who were allowed to work late or use flex time for reasons such as attending church functions or travel, previously arranged this with Peterson; they did not request the time because they were late to work.

Further, plaintiff does not offer any evidence that the comments and incidents taken together interfered with her work performance or altered the terms and conditions of her employment such that she was subjected to an abusive working environment because of her race or gender. Accordingly, the Court finds that plaintiff has not established a *prima facia* case of discrimination based on a hostile work environment.

B. Retaliation

To establish a *prima facie* claim for retaliation, a plaintiff must present facts in support of the following elements: (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff or action that would dissuade a reasonable worker from making or supporting a charge of discrimination; and (3) a causal connection between the protected activity and adverse action. See Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 68 (2006); Holt v. KMI-Continental, 95 F.3d 123, 130 (2d Cir. 1996), cert. denied, 1997 WL 71191 (May 19, 1997); Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995) (citations omitted).

Here, Plaintiff claims that she was subjected to retaliation by Peterson for having complained of sexual harassment by her coworker, Dan Williams, in April 2000. She testified that when he became her supervisor, Peterson told her she was on his "shit list" for complaining about Williams in 2000. Based on this alleged

statement, which Peterson denies, Plaintiff claims that he retaliated against her by (1) refusing to let her leave work to pick up her paycheck, (2) warning her to respect his position as her supervisor, and (3) refusing to allow her to make up an hour of work after she arrived late to work.

"The antiretaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm....In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington, 548 U.S. 67-68 (internal quotations omitted). "Trivial harms" are not materially adverse. Id. "Material adversity is to be determined objectively, based on the reactions of a reasonable employee." Id. at 69–70, 126 S.Ct. 2405. "Context matters," as some actions may take on more or less significance depending on the context. Alleged acts of retaliation must be evaluated both separately and in the aggregate, as even trivial acts may take on greater significance when they are viewed as part of a larger course of conduct." Tepperwien v. Energy Nuclear Operations, Inc., 663 F.3d 556, 567-8 (2d Cir. 2011.)(citing Burlington, 548 U.S. at 69-70; Hicks v. Baines, 593 F.3d 159, 164 (2d Cir.2010)).

Here, the Court finds that plaintiff has not established that any of the alleged conduct was materially adverse such that a reasonable employee would be dissuaded from making a charge of discrimination. First, the paycheck incident and Peterson's refusal to allow Plaintiff to stay at work an additional hour to make up for the hour she was late both fall into the category of trivial harms or minor annoyances that are not materially adverse. Plaintiff did not lose pay for either occurrence. Peterson and his supervisor conferred and arranged to have plaintiff's paycheck delivered to her building by courier the day they were notified that her paycheck was mistakenly not deposited into her bank account. When plaintiff's request to work late to make up for an hour she missed because she was late to work was denied, she was instead allowed to take vacation time to make up for the missed time. Further, as noted above, plaintiff's evidence that other employees were allowed to work outside of their normally scheduled hours is not probative of her claim that this action was retaliatory or discriminatory because those employees were not similarly situated to plaintiff. Plaintiff also does not allege that she was disciplined in any way for having arrived late to work. Rather, she was merely obligated to use vacation time for the missed hour.

Plaintiff does not allege or present any facts to suggest that the paycheck incident was caused by any discriminatory or

retaliatory action on the part of Xerox, nor does she deny that she was late to work. Rather, she merely states that these actions were retaliatory because Peterson once stated that she was on his "shit list" for her complaint about Williams in 2000. However, even assuming that Peterson made this comment and that this comment is evidence of a retaliatory motive, these actions are not themselves materially adverse. See Tepperwien, 663 F.3d at 571-2.

With respect to the "verbal written warning" plaintiff received following the paycheck incident, the court does not find that this warning was materially adverse. First, while the document is referred to as a "verbal written warning" there is no evidence that it was placed in plaintiff's file, that it had any negative effect on her employment, placed her in any disciplinary process or caused her to lose job status or other benefits. The document was shown to plaintiff on Peterson's computer screen, but she did not receive a copy. The "verbal written warning" sets forth the factual circumstances behind the paycheck incident and explains that both Peterson and his supervisor agreed that Peterson should "counsel Vanessa for her [behavior] in front of the group." It further documents that Peterson "wanted Vanessa to know from this point forward [he] was not going to accept any more disrespect." Even assuming that Peterson's motivation was retaliatory and considering this warning in connection with Peterson's other conduct, this action does not rise to the level of

materiality that would implicate the antiretaliation provisions of Title VII, as it would not dissuade a reasonable worker from making a complaint of discrimination. See Tepperwien, 663 F.3d at 571-2, note 9 (citing Perez v. N.Y. & Presbyterian Hosp., 2009 WL 3634038, at *15 (S.D.N.Y. Nov. 3, 2009) and Potenza v. W. Irondequoit Cent. Sch. Dist., 2009 WL 2876204, at *8 (W.D.N.Y. Sept. 2, 2009)). Notably, it did not dissuade plaintiff from making several subsequent complaints regarding Peterson to the internal ethics helpline and the EEOC. See Jantz v. Emblem Health, 2012 WL 370297, *15 (S.D.N.Y. February 6, 2012) ("The Second Circuit has instructed that while the test is [] objective, it remains relevant whether the plaintiff himself was deterred from complaining.")(citing Tepperwien, 663 F.3d at 572)). Accordingly, the Court finds that this action was not materially adverse and that plaintiff has not established a *prima facie* claim for retaliation.

**CONCLUSION**

For the reasons set forth herein, defendants' motion for summary judgment is granted. Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

s/ Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated: Rochester, New York
June 13, 2012